CLINTON FOODS, Inc., a corporation, authorized to do business in Florida, Plaintiff,

v.

FROZEN FOODS, INC. OF MIAMI, a Florida corporation, and Viggo W. Jacobsen and Gladys H. Jacobsen, co-partners, formerly trading and doing business as Snow Crop Distributors of Miami, Defendants.

FROZEN FOODS, INC. OF MIAMI, Plaintiff,

v.

CLINTON FOODS, Inc., Defendant. Civ. Nos. 5302-M, 5525-M.

United States District Court S. D. Florida, Miami Division.

April 22, 1955.

Anderson, Scott, McCarthy & Preston, Miami, Fla., for Clinton Foods, Inc.

John P. Booth, Miami, Fla., for Frozen Foods, Inc., of Miami, and others.

HOLLAND, Chief Judge.

These causes came on for trial before the Court. After the presentation of evidence, argument of counsel and full consideration, the Court rules as follows:

### Pleadings and Issues Created.

1. In the first suit, 5302–M–Civil, Clinton Foods, Inc., sues Frozen Foods, Inc. of Miami, a Florida corporation, and Viggo W. Jacobsen and Gladys H. Jacobsen, co-partners, formerly trading and doing business as Snow Crop Distributors of Miami, for merchandise sold in the amount of $20,086.19, during the period August 31, 1953, to October 30, 1953.

The correct amount due on the account stated has been stipulated by counsel for the respective parties to be the sum of $17,826. Frozen Foods, Inc. of Miami admits liability for the stipulated amount. Mr. and Mrs. Jacobsen deny all liability.

2. Frozen Foods, Inc. of Miami in the second suit, 5525–M–Civil, claim rights under two agreements, Plaintiff's Exhibit No. 11 in Case 5302 and Plaintiff's Exhibit "A" in Case 5525; one dated November 12, 1951, relating to juice dispensers alone and not to products sold or to be sold; and one dated May 21, 1952, creating a primary distributorship relationship. These two agreements were between Clinton Foods, Inc. and the partnership.

Frozen Foods, Inc. of Miami under the original name of Snow Crop Distributors of Miami, Inc., was organized February 3, 1953. Frozen Foods, Inc. of Miami, on the basis of ownership of the rights under these two agreements, with the alleged transfer from the partnership to the corporation, with the knowledge and consent of Clinton Foods, Inc., claims damages against Clinton Foods, Inc., in the second suit for breach of the terms of the agreement. Frozen Foods, Inc. of Miami claims proper notice of cancellation was not given to them, both contrary to the terms of a contractual provision in one agreement, and failure to give reasonable notice under the other. The Jacobsens are not parties to the second suit.

3. The two cases were consolidated for the purpose of trial.

### Positions Taken by the Parties.

1. Clinton Foods, Inc., disclaims recognition of Frozen Foods, Inc. of Miami as changing its original relationship with the partnership, and insists that the partnership is liable for the merchandise sold. In the first suit Clinton Foods, Inc., sues both Frozen Foods, Inc. of Miami and the Jacobsens. As a creditor, the mere suing of both is not inconsistent with its position of claiming the continued partnership liability and the corporate liability. In the second suit, 5525–M–Civil, Clinton Foods, Inc., disclaims any recognition of Frozen Foods, Inc. of Miami as its debtor and contractor, and maintains its actions in the sale of merchandise were with the Jacobsens, and that there is no predicate for liability to Frozen Foods, Inc. of Miami.

2. Frozen Foods, Inc. of Miami admits it was the recipient of the merchandise sold and sued for in the first suit and that it owes Clinton Foods, Inc., the stipulated amount. Frozen Foods, Inc. of Miami maintains that it took by assignment all rights of distributorship enjoyed by the Jacobsens, as a

partnership, and this with the knowledge and consent of Clinton Foods, Inc. Under these agreements Frozen Foods, Inc. of Miami claims breaches of contract by Clinton Foods, Inc., and says that it has been damaged thereby.

### Findings of Fact.

1. Viggo W. Jacobsen was General Manager of Miami Quick Freeze and Storage Co. The beginning of this representation is immaterial. He was General Manager at all times incident to this litigation.

2. The Jacobsens formed a partnership in November, 1951, for the purpose of distributing the dispensers under the first agreement. In May, 1952, the business was expanded and was conducted under the second agreement with Clinton Foods, Inc., to include the distribution of Snow Crop frozen food products. This business was continued up to February 28, 1953, when Snow Crop Distributors of Miami, Inc., which was organized February 3, 1953, commenced business March 1, 1953. All of the partnership assets were assigned to the corporation, Plaintiff's Exhibit "B" for Identification in Case No. 5525–M–Civil, in consideration for an equal value of capital stock in the corporation. All of the capital stock of the corporation was owned by Mr. and Mrs. Jacobsen, except two shares issued to their attorney as a nominal and qualifying stockholder. Mr. Jacobsen was President and Mrs. Jacobsen was Secretary and Treasurer. The assignment of partnership assets to the corporation was general in its terms and attempted to specifically assign the rights under the two contracts.

3. After March 1, 1953, the business continued and merchandise was sold by Clinton Foods, Inc., on the same procedure and terms of payment as theretofore. By acquiesced consent of Clinton Foods, Inc., and Snow Crop Distributors of Miami, Inc., the terms theretofore controlling were followed in the withdrawal of merchandise from the warehouse of Miami Quick Freeze and Storage Co., and payment by Snow Crop Distributors of Miami, Inc., to Clinton Foods, Inc. There was no new agreement between Clinton Foods, Inc., and Snow Crop Distributors of Miami, Inc., as to the distributorship, and no formal recognition by Clinton Foods, Inc., of a new arrangement with Snow Crop Distributors of Miami, Inc., as its new distributor.

4. Snow Crop Distributors of Miami, Inc., indicated the change in the entity conducting the business venture to that of corporate status by advertisements, checks in payment of accounts, and in the normal conduct and correspondence to the business world with which it came in contact that the corporation was distributing for Clinton Foods, Inc., in the designated territory.

5. The correspondence generally between Clinton Foods, Inc., and Snow Crop Distributors of Miami, Inc., brought home to Clinton Foods, Inc., the facts with which Clinton Foods, Inc., is charged with notice, that this change to corporate status had been effected.

6. In August, 1953, relations began to become strained between Clinton Foods, Inc., and Snow Crop Distributors of Miami, Inc. This arose after continued disagreements as to the accuracy of invoices as to amounts due and resulted in the lack of complete agreement as to Snow Crop Distributors of Miami, Inc.'s line of credit. About the middle of September, 1953, Clinton Foods, Inc., notified Snow Crop Distributors of Miami, Inc., of a cancellation of its distributorship representation to become effective October 17, 1953. One of the results of this continued strained relationship was that Snow Crop Distributors of Miami, Inc., changed its corporate name to that of Frozen Foods, Inc. of Miami on September 23, 1953.

7. Clinton Foods, Inc., contends that the Jacobsens should be held liable as partners for the sums due on the basis that the merchandise was withdrawn pursuant to a scheme to defraud them; because Mr. Jacobsen was General Manager of the warehouse, Miami

Quick Freeze and Storage Co., where the goods were stored, and he in that capacity signed all of the warehouse delivery memos, and at the same time he was the President of the Miami Corporation, thereby allowing his corporation to withdraw goods from the warehouse in the name of the partnership and without including the name of "Inc.", designating the corporate entity, and thereafter the Jacobsens sold their interest in the corporation. With this contention the Court disagrees, by reason of the following facts:

(a) Prior to the formation of the partnership Mr. Jacobsen, while General Manager of the warehouse, was requested by an officer of Clinton Foods, Inc., to form an organization for the purpose of distributing Snow Crop products in the South Florida area. The partnership and the successor corporation were formed for that purpose.

(b) Between March 1 and August 30, 1953, a period of approximately 26 weeks, the volume of business conducted between the parties exceeded the amount of $60,000, as shown by Defendant's Exhibit No. 6 in Case No. 5302. From August 31, 1953, to October 30, 1953, a period of approximately 7 weeks, the volume of business conducted between the parties was the stipulated amount of $17,826, and as shown by Plaintiff's Exhibit No. 1 in Case No. 5302, less credits. The amount of merchandise withdrawn, here in issue, does not seem disproportionate to that apparently withdrawn prior to that time.

(c) The letter of August 26, 1953, from Clinton Foods, Inc., to Snow Crop Distributors of Miami, Defendant's Exhibit No. 7, in Case 5302, reflects that the Assistant Credit Manager of Clinton Foods, Inc., was aware that on that date there was a balance due his company in the amount of $7,124.08, and that the Miami concern intended to withdraw from the warehouse merchandise in the amount of $7,500 and, further, that in the opinion of the Assistant Credit Manager the credit extended to the Miami concern should not exceed the sum of $5,000.

(d) Evidence discloses that the delay in payments was due to the discrepancies in the amounts due on the invoices, as tabulated by the respective concerns.

(e) Evidence discloses no steps taken on the part of Clinton Foods, Inc., to curtail the activities of the Miami concern during the period here at issue as to limiting the extension of credit or otherwise resolving the differences between the two concerns, other than the notice of cancellation of the distributorship.

(f) Payments on the account were continued after the effective date of the cancellation of the distributorship until receipt of a registered letter, Plaintiff's Exhibit No. 13, in Case 5302, demanding payment in the sum of $23,439.29, and containing a threat of suit. One payment by check in the amount of $645.92 was made thereafter.

8. In Case No. 5302–M–Civil, Clinton Foods, Inc., is due and owing of the defendant, Frozen Foods, Inc. of Miami, the sum of $17,826. Viggo W. Jacobsen and Gladys H. Jacobsen are not liable to Clinton Foods, Inc., and as to them the case should be dismissed.

9. In Case No. 5525–M–Civil the plaintiff has failed to carry the burden of proof to establish a cause of action, and the case should be dismissed.

### Conclusions of Law.

1. In the first suit, 5302–M–Civil, Clinton Foods, Inc., should have and recover of the defendant, Frozen Foods, Inc. of Miami, the sum of $17,826.

2. In the first suit, 5302–M–Civil, the action should be dismissed as to Viggo W. Jacobsen and Gladys H. Jacobsen.

3. In the second suit, 5525–M–Civil, the issue is determined upon the assignability of two contracts. The parties to the two contracts were Clinton Foods, Inc., and Mr. and Mrs. Jacobsen, as partners, doing business as Snow Crop Distributors of Miami. The Court holds that the contracts were personal and

were not assignable from the partnership to the successor corporation, assignee of the partnership, without the express consent of Clinton Foods, Inc. The contracts were not expressly assignable by their terms, and not by implication due to any acquiescence on the part of Clinton Foods, Inc.

4. Consistent with the position of Clinton Foods, Inc., that the agreements continued with the Jacobsens as partners, rather than with the corporate entity subsequently formed, counsel announced his intention to argue that under the agreements the notice of cancellation given was sufficient and reasonable under all the circumstances. The Court stated its view that it was not necessary to hear counsel on that phase, because the Court wished to hear counsel as to whether Snow Crop Distributors of Miami, Inc., became the assignee of the rights of the partnership under the contract thereby requiring any notice to be given to them.

5. Counsel for Snow Crop Distributors of Miami, Inc., relied upon the proof of acceptance by Clinton Foods, Inc., of Snow Crop Distributors of Miami, Inc., as constituting the recognition by Clinton Foods, Inc., that Snow Crop Distributors of Miami, Inc., was the assignee of these rights. The Court holds that such is not sufficient, and that Snow Crop Distributors of Miami, Inc., does not have the right to insist that Clinton Foods, Inc., was required to give them notice of cancellation of rights under the contract. Clinton Foods, Inc., was justified in cancelling the distributorship arrangement without notice and especially so when 30 days' notice was given of the effective date of cancellation.

6. As a further conclusion of law, it appears that in Plaintiff's Exhibit No. 11, in Case No. 5302, no notice for cancellation was provided whatsoever. In Plaintiff's Exhibit "A", in Case No. 5525, 30 days' notice was required, but this agreement covered the distributorship of instrumentalities, juice dispensers, and not the merchandise to be sold, namely, the institutional size packages of juices to go into the dispensers. This suit does not concern such instrumentalities, or dispensers.

7. Case No. 5525–M–Civil, Frozen Foods, Inc. of Miami, against Clinton Foods, Inc., should be dismissed.

8. The costs in Case No. 5302–M–Civil should be taxed by the Clerk against Clinton Foods, Inc. And in the second suit, No. 5525–M–Civil, the costs should be taxed by the Clerk against Frozen Foods, Inc. of Miami.

9. A judgment should be drawn to conform to these findings and submitted to the Court for signature.