316 So.2d 557 (1975)
YAMAHA PARTS DISTRIBUTORS INC. et al., Appellants,
v.
Robert EHRMAN et al., Appellees.
No. 46103.
Supreme Court of Florida.
July 2, 1975.
Rehearing Denied September 3, 1975.
*558 James E. Tribble, of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for appellants.
Coleman R. Rosenfield and John L. Lindquist of the Law Offices of Coleman R. Rosenfield, Fort Lauderdale, for appellees.
J. Robert McClure, Jr., and William C. Owen, of McClure & Wigginton, Tallahassee, for Florida Auto. Dealers Assn., amicus curiae.
ENGLAND, Justice.
This case is here on direct appeal from an order of the Broward County Circuit Court which upheld the constitutionality of Sections 320.641 and 320.695, Florida Statutes. We have jurisdiction to review the court's decision pursuant to Article V, § 3(b)(1) of the Florida Constitution.
Appellant Yamaha International Corporation ("Yamaha"), is an international corporation engaged in the manufacture and distribution of motorcycles. The individual appellees are principals of the corporate appellee, U-Cycle, Inc. ("U-Cycle"), a Florida corporation engaged in selling and servicing Yamaha's motorcycles pursuant to a franchise agreement dated April 30, 1970.
On June 12, 1974, Yamaha acted without notice to terminate the franchise agreement between the parties and to suspend future sales and distribution of motorcycles or parts to U-Cycle. Shortly thereafter, U-Cycle filed suit under Section 320.695, Florida Statutes, seeking a temporary and a permanent injunction against Yamaha and asking that the court reinstate the franchise contract. Following a series of procedural events not pertinent to this appeal,[1] the trial court entered an order granting U-Cycle the relief it requested. In that order the trial court found Sections 320.641 and 320.695, Florida Statutes, to be constitutional, and it held that Yamaha's contract termination was invalid for failure to provide 90 days notice of termination as required by Section 320.641(1)(a). That order is the subject of this appeal.
Sections 320.641 and 320.695, enacted in 1970, became effective on January 1, 1971 after Yamaha and U-Cycle established their franchise relationship.[2] The former section requires a motor vehicle[3] manufacturer to give 90 days notice to a franchisee, and to the state's motor vehicle regulatory agency,[4] prior to the cancellation of a franchise contract. A franchisee is authorized to file a complaint with the agency during the 90 day period "for a determination of unfair discontinuation or cancellation," and by so doing the proposed cancellation is deferred "until final determination by the department of the issues raised in such complaint."[5] Section 320.695 authorizes injunctive relief for a failure to comply with this notice provision.
Yamaha contends that the 90 day notice requirement of Section 320.641 cannot be applied to its 1970 franchise contract with U-Cycle because the statute was intended to be prospective in operation. It further contends that if we hold the statute to operate retroactively, then its application here would unconstitutionally impair Yamaha's *559 contract.[6] U-Cycle counters Yamaha's contentions by suggesting that a 90 day notice of termination is part of a valid regulatory scheme adopted under the state's "police power",[7] and that the notice requirement constitutes nothing more than a procedural safeguard for franchisees which may be applied to contracts entered into before the statute became effective. We agree with Yamaha that the 90 day notice requirement cannot constitutionally apply to this franchise contract.
Florida legislation is presumed to operate prospectively unless there exists a showing on the face of the law that retroactive application is intended.[8] No such showing appears in the 1970 legislation now under review. To justify retroactive application it is not enough to show that this legislation is a valid exercise of the state's police power because that power, however broad in other contexts, here collides with the constitutional ban on laws impairing contracts. Virtually no degree of contract impairment has been tolerated in this state.[9] Under the circumstances of this case, we hold that the state's interest in policing franchise agreements and other manifestations of the motor vehicle distribution system is not so great as to override the sanctity of contracts.[10]
Yamaha and U-Cycle signed a contract in 1970 which authorized either party to terminate their arrangement on 30 days written notice. Obviously this feature of their contract, like each other contract feature, was the result of bargaining for the totality of promises each made to the other.[11] If the trial court's order were to be sustained, the 30 day notice provision would be extended by at least 60 days through the application of a law which became effective after the bargain was struck. We find no support in the law of this state to warrant this result.[12] The right of a manufacturer to maintain the integrity of his trade name in the market-place is a valuable right which a disreputable *560 franchisee can quickly destroy. If Yamaha believed that it could not tolerate abuse of its market position for more than 30 days and entered into an exchange of promises on that basis,[13] no subsequent governmental enactment should require the continuation of an unwanted situation for a significantly longer term.
We hold that the Section 320.641, Florida Statutes, applies prospectively to motor vehicle franchise contracts signed after its effective date.[14] U-Cycle's 1970 contract with Yamaha is not affected by that provision, and in the absence of any other alleged violation of Sections 320.60 through 320.70, Section 320.695 has no applicability to this case. The order of the trial court is quashed with directions to dismiss the complaint.
ADKINS, C.J., and ROBERTS, BOYD, McCAIN and OVERTON, JJ., and MUSZYNSKI, Circuit Judge, concur.
NOTES
[1] The trial court initially granted a temporary restraining order against Yamaha, but subsequently vacated the order at Yamaha's request on the ground that it was entered without a hearing. An adversary hearing was then held, after which a new restraining order was entered which reaffirmed the trial court's original action.
[2] Chapter 70-424, Laws of Florida (1970).
[3] Motorcycles are included in the definition of "motor vehicle" in Section 320.60(9), Fla. Stat.
[4] The regulatory scheme in chapter 320, Fla. Stat., is monitored by the Department of Highway Safety and Motor Vehicles. Section 320.60(7), Fla. Stat.
[5] Section 320.641(3), Fla. Stat.
[6] Art. I, Section 10, U.S.Const.; Art. I, Section 10, Fla. Const.
[7] The exercise of police power is reserved to the states by the Tenth Amendment to the United States Constitution. McInerney v. Ervin, 46 So.2d 458 (Fla. 1950). See also the Preamble to the 1968 Florida Constitution.
[8] Trustees of Tufts College v. Triple R. Ranch, Inc., 275 So.2d 521 (Fla. 1973); In re Seven Barrels of Wine, 79 Fla. 1, 83 So. 627 (1920).
[9] Fort Lauderdale v. State ex rel. Elston Bank & Tr. Co., 125 Fla. 89, 169 So. 584 (1936); State ex rel. Mittendorf v. Hoy, 112 Fla. 526, 151 So. 1 (1933).
[10] We do not hold that the whole or any part of chapter 320, Fla. Stat., is not a valid exercise of the state's power to regulate commerce or to license and control motor vehicle distributions within the state. Whether this legitimate state intrusion into commerce is grounded on the police power or otherwise, we only hold that Article I, Section 10 of the Florida Constitution has the overriding claim in the situation we have under review.
[11] We recognize that the 1970 Legislature enacted Sections 320.60 through 320.70, Fla. Stat., on the assumption that motor vehicle manufacturers dominate contract negotiations with their Florida franchisees. The focus of these provisions is to redress the balance. Accepting for purposes of this case that the legislature's concern was reasonable and that its remedial legislation was appropriate, we are not impelled to conclude that all contracts between motor vehicle manufacturers and their Florida franchisees are inherently one-sided or presumptively invalid. U-Cycle does not contend that the contract, or any particular provision, is invalid. In fact, by this lawsuit, U-Cycle has affirmatively requested reinstatement of the contract on its original terms.
[12] "The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,  by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened." Louisiana v. New Orleans, 102 U.S. 203, 206-207, 26 L.Ed. 132 (1880). This principle has been adopted in Florida. State ex rel. Woman's Ben. Ass'n v. Port of Palm Beach Dist., 121 Fla. 746, 164 So.2d 851, 856 (1935)
[13] It appears from the record that Yamaha did not give U-Cycle the 30 days written notice of termination required by paragraph 21 of its franchise contract with U-Cycle. Yamaha communicated its termination orally on June 12, 1974, and then followed that action on July 5, 1974 with a letter of termination "effective immediately." The validity of Yamaha's termination, however, or the legal consequence of a premature or unwarranted cancellation, is not an issue in this case. This case is grounded solely on Section 320.695, Fla. Stat., which authorizes injunctive relief.
[14] We do not now pass on the constitutionality of that statute, or Section 320.695, as applied to post-1970 franchise contracts.