David A. RABON, Plaintiff-Appellee,

v.

AUTOMATIC FASTENERS, INC., et al., Defendants,

AUTOMATIC FASTENERS, INC., and Omark Industries, Inc., Defendants-Appellees,

v.

HARDAWAY CONSTRUCTION COMPANY, INC., Third Party Defendant-Appellant.

No. 79–2994.

United States Court of Appeals, Fifth Circuit.*
Unit B

April 12, 1982.

Rehearing Denied May 18, 1982.

* Former Fifth Circuit Case, Section 9(1) of Public Law 96–452 October 14, 1980.

John E. Houser, Jacksonville, Fla., for third party defendant-appellant.

Marks, Gray, Conroy & Gibb, John R. Saalfield, Jacksonville, Fla., for Automatic Fasteners, Inc.

Charles Cook Howell, III, Jacksonville, Fla., for Omark Industries, Inc.

W. C. Gentry, Jacksonville, Fla., for David A. Rabon.

Before TUTTLE, TJOFLAT and KRAVITCH, Circuit Judges.

TJOFLAT, Circuit Judge:

In the course of his employment for Hardaway Construction Company (Hardaway), David Rabon was struck above the left eye by a 2½ inch nail which was shot from a powder actuated stud gun by a co-employee. Rabon brought a diversity action against Omark Industries, Inc. (Omark), the manufacturer of the stud gun, and Automatic Fasteners, Inc. (Automatic), the distributor of the stud gun.[1] Omark and Automatic brought a third party indemnity action against Hardaway. The jury found that Omark and Automatic were liable to Rabon for $200,000 and that Omark and Automatic were entitled to complete indemnification from Hardaway.

The district court entered judgment accordingly. Hardaway appeals the judgment for indemnity on several grounds. We affirm.

I.

Hardaway argues first that under Florida law[2] it cannot be required to indemnify Omark and Automatic and that the district court therefore should have granted its motion to dismiss the third party complaint.[3] We disagree. On the facts as the jury was authorized to find them, Florida indemnity law would permit a judgment against Hardaway.

Rabon was employed as a carpenter's helper by Hardaway, the general contractor for a portion of Amelia Island Plantation near Jacksonville, Florida. Hardaway purchased Omark powder actuated stud guns from Omark's distributor, Automatic. A stud gun is used to drive nails into concrete and other hard surfaces, and operates on the order of a .22 pistol, using a .22 cartridge to propel the fastener through the barrel and into the desired surface.

Through Automatic, Omark undertook to train and instruct users of its powder actuated tools by making a company representative available on the job site to train personnel who might use them. Thus, when Automatic's salesman, Wiggins, first sold stud guns to Hardaway, he informed Hardaway that only trained operators should use them and that he would be available to instruct Hardaway's employees in their use. Hardaway agreed to make its employees available to Wiggins for training, and assumed responsibility to identify, locate, and organize the workers Wiggins was to train.

1. Automatic is a wholly owned subsidiary of Allied Products Corporation, which was also named as a defendant. Allied Products Corporation was jointly liable with Automatic. We refer to the two collectively as Automatic. This opinion will refer to Automatic and Omark together as defendants.

2. All agree that Florida substantive law governs this case.

3. In fact, Hardaway does not advance its argument in terms of an asserted error by the district court, and intimates nowhere in its discussion of the Florida law of indemnity in what way the district court's purported misapplication of that law led to error. Although probably not obliged to do so in the face of such a defect, see, e.g., Spellacy v. Southern Pacific Co., 428 F.2d 619 (9th Cir. 1970), we nonetheless reach the merits of Hardaway's argument. If Hardaway's view of the Florida law of indemnity were correct, then the district court's denial of Hardaway's motion to dismiss the third party complaint was reversible error. We therefore treat this appeal as assigning error to that ruling.

Wiggins subsequently visited the construction site regularly and was available to instruct employees as they were hired. Included in the training was the warning that nails should not be fired into concrete less than three inches from its edge.

Carl Jackson went to work for Hardaway in February of 1974 as a carpenter's helper. He had never before used a stud gun and was not asked by Hardaway about his prior experience with the tool. Jackson was issued a stud gun on his first day on the job and at no time received instruction in its use.

On April 15, 1974, Jackson and Rabon were working on a roof at the Amelia Island construction site. Jackson, attempting to secure a board to the edge of the underlying concrete, fired his stud gun into the concrete less than three inches from the edge. The nail went through the board, ricocheted out of the concrete, and traveled upward into Rabon's eye.

Rabon alleged in his complaint that Omark and Automatic were strictly liable because the stud gun was defective by reason of insufficient warning and training in its use, and, alternatively, that Omark and Automatic negligently performed their duty to warn or train users of the stud gun, an inherently dangerous instrumentality. Omark and Automatic denied liability and further answered that if they were liable, it was due not to their independent conduct but to Hardaway's breach of its agreement to make its employees available for instruction in use of the stud gun. Alleging derivative liability for Hardaway's active fault, Omark and Automatic sued Hardaway for indemnity. Hardaway contends that on the stated facts it cannot be liable to the defendants under Florida law.

In *Houdaille Industries, Inc. v. Edwards*, 374 So.2d 490 (Fla.1979), the Supreme Court of Florida faced the question whether a manufacturer sued for breach of warranty may bring a third party action for indemnity against the plaintiff's employer. Edwards, an employee of Houdaille Industries, was killed when a steel cable used in the manufacture of concrete beams broke while being stretched through a beam mold. Edwards' personal representative sued the manufacturer of the steel cable, Florida Wire, for wrongful death, alleging that Florida Wire had breached an implied warranty of fitness by providing a defective cable. Florida Wire filed a third party indemnity action against Houdaille, alleging that if Florida Wire were negligent, its negligence was merely passive, while that of Houdaille was active. Under the traditional Florida test for implied indemnity, Florida Wire's passive negligence would have provided a valid basis for its recovery over.

The trial court granted Houdaille's motion for summary judgment on the third party complaint, concluding that if Florida Wire was liable to Edwards, it was necessarily for breach of warranty or some other wrongdoing which could only be characterized as active negligence. The district court of appeal reversed, holding that a manufacturer of a product is entitled to bring an action in implied indemnity against an employer who has, through active misuse of the product, caused injuries to its employee. On certiorari, the Supreme Court of Florida quashed the decision of the court of appeal and ordered the summary judgment for Houdaille reinstated.

The supreme court held that, "absent a special relationship between the manufacturer and the employer which would make the manufacturer only vicariously, constructively, derivatively, or technically liable for the wrongful acts of the employer, there is no right of indemnification on the part of the manufacturer against the employer." 374 So.2d at 492. The court suggested that the court of appeal had improperly used the traditional indemnity concepts of active and passive negligence by weighing the fault of the manufacturer against the fault of the employer; in the context of implied indemnity, those terms meant nothing more than fault or no fault. *Id.* at 493. In applying this test, the court held, it is improper to weigh the relative fault of the parties.

Under *Houdaille*, if the plaintiff's recovery is necessarily based on the culpable conduct of the defendant, then no cause of action for indemnity will lie.[4] Furthermore, a third party indemnity action will survive a motion to dismiss only if the third party complaint alleges: (1) that there existed a special duty running from the indemnitor to the indemnitee; (2) that the indemnitor breached that duty; (3) that the plaintiff's injuries resulted from the breach; and (4) that the indemnitee can be held liable for the injuries resulting to the plaintiff from the indemnitor's acts.[5]

Defendants Omark and Automatic reason that they were held liable to Rabon on one of two theories: either they were strictly liable as the manufacturer and the distributor of a product defective by reason of insufficient warning and instruction, or else they were liable for their breach of the nondelegable duty to warn prospective users of the hazards of the stud gun, a dangerous instrumentality under Florida law. In either case, Omark and Automatic argue, their liability was merely vicarious and was occasioned solely by Hardaway's negligent breach of its special duty to them to make its employees available for training, thus entitling them to indemnity.

If Rabon's sole claim had been in strict liability, the defendants' theory would fail. Florida law regards one who is strictly liable as being at fault, that is, not merely vicariously liable. *West v. Caterpillar Tractor Company, Inc.*, 336 So.2d 80 (Fla. 1976); *see* Chesrow, Howard, and Howard, *Fault and Equity: Implied Indemnity after Houdaille*, 34 U.Miami L.Rev. 727, 734

(1980). For that reason, one who is strictly liable cannot recover indemnity under *Houdaille*. *Ford Motor Co. v. Hill*, 381 So.2d 249 (Fla. 4th Dist.Ct.App.1979).

However, Rabon stated a cause of action not only in strict liability, but also in negligence. The negligence theory was that the stud gun is a dangerous instrumentality, that the manufacturer and the distributor of a dangerous instrumentality have a nondelegable duty to warn those who might use it of its dangerous potentialities,[6] and that the defendants negligently performed their duty to warn all the Hardaway employees who used stud guns of their dangers. The defendants urge that if they were liable to Rabon on the negligence theory, their liability was only vicarious and was the product of Hardaway's failure to discharge its obligation to make the workers available for instruction. Thus, they argue, they are entitled to indemnity under *Houdaille*.

In light of *Houdaille*, the determinative inquiry is whether a party liable in negligence for its nonperformance of a nondelegable duty may be without fault and merely vicariously liable for a third party's breach of its obligation to discharge or help discharge the first party's duty. Phrasing the question more elegantly, "whether one may delegate a nondelegable duty," a Florida court of appeal has answered the question in the affirmative in a decision which controls our disposition of this issue. *Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc.*, 385 So.2d 676 (Fla. 3d Dist.Ct.App.1980).[7]

In that case, *Napoleon Steel* was engaged in a crane operation on a construction site.

---

**4.** See Chesrow, Howard, and Howard, *Fault and Equity: Implied Indemnity after Houdaille*, 34 U.Miami L.Rev. 727, 749 (1980).

**5.** See Chesrow, Howard, and Howard, *supra* note 5, at 748. The authors also assert that the complaint against the indemnitee must allege a cause of action based at least in part on imputed liability. Subsequent developments in Florida law have proven this apparently sound reading of *Houdaille* inaccurate. *See Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc.*, 385 So.2d 676 (Fla. 3d Dist.Ct.App. 1980), discussed at p. 1236 *infra*.

**6.** *See Dayton Tire and Rubber Co. v. Davis*, 348 So.2d 575, 581 (Fla. 1st Dist.Ct.App.1977), *rev'd on other grounds sub nom. Goodyear Tire & Rubber Co. v. Hughes Supply, Inc.*, 358 So.2d 1339 (Fla.1978); *Walker v. National Gun Traders, Inc.*, 116 So.2d 792 (Fla. 3d Dist.Ct.App. 1960).

**7.** We are bound by the decision of the district court of appeal as we would be by a decision of the Florida Supreme Court. *See Mott v. Mitsubishi International Corp.*, 636 F.2d 1073 (5th Cir. 1981).

Under Florida law, such activity is inherently dangerous and imposes a nondelegable duty upon those involved to use care in its performance. Atlantic, a subcontractor on the site, employed men who worked several stories below the crane. Since Napoleon's crane operator could not watch the deck below and the load on the crane simultaneously, Napoleon asked Atlantic to warn its employees when the crane was in operation. Atlantic "agreed to assume the duty, which was otherwise owed by Napoleon, of keeping [its] men safely away from the proximity of the crane while it was in operation." 385 So.2d at 679. However, Atlantic failed to warn plaintiff's decedent, and he was killed when a load of blocks fell from the crane. The court held that Napoleon was entitled to indemnity from Atlantic because it was only "technically" liable due to Atlantic's negligent performance of Napoleon's "nondelegable duty."

Holding a particular undertaking to be nondelegable means that *responsibility*, i.e., ultimate liability, for the proper performance of that undertaking may not be delegated. The term nondelegable does not preclude delegation of the actual *performance* of the task. "Nondelegable" applies to the liabilities arising from the delegated duties if breached.

\*　\*　\*　\*　\*　\*

Napoleon, involved in an inherently dangerous activity, may delegate the duty to look out for the safety of the workers to Atlantic. Napoleon would remain liable for injuries to third persons such as Atlantic's employee ... for a breach by Atlantic of the duty delegated to it. Napoleon, in turn, if found to be without fault, would be allowed to seek indemnity from Atlantic who failed to properly carry out the duty that was delegated to it.

*Id.* at 679–680 (citations omitted).

*Napoleon's* application of *Houdaille* is directly on point: just as Florida law permitted Napoleon to recover indemnity from Atlantic when Atlantic accepted responsibility for discharging Napoleon's nondelegable duty to warn its workers and then breached its duty, so Florida law would permit the defendants in this case to recover indemnity from Hardaway when Hardaway accepted responsibility for cooperating with Omark and Automatic in discharging their nondelegable duty to warn of the dangers of the stud gun and then breached its duty.

The defendants' third party complaint thus advanced one valid theory, premised on the defendants' liability for negligent performance of their nondelegable duty to warn, and one invalid theory, premised on the defendants' strict liability. Since the third party complaint stated one claim permitting recovery, the district court properly denied Hardaway's motion to dismiss it.[8]

## II.

Before trial, Rabon and the defendants entered into a Mary Carter agreement, whereby the defendants sought to limit their exposure in the event they were found solely liable and Rabon sought to assure himself at least some recovery in the event the jury should find against him on his claim against the defendants. The agreement provided that Omark and Automatic would each pay Rabon $20,000 regardless of the final outcome of Rabon's suit against them or the amount of the verdict, and regardless of the outcome of their third party claim against Hardaway. The agreement further provided:

> [Rabon] will satisfy any judgment herein against Omark and/or Automatic which is greater than $40,000 only to the extent that such judgment is indemnified by Hardaway; in the event the judgment is less than $40,000 or Omark and Automat-

---

**8.** Hardaway did not assert at trial or on appeal that the third party complaint should be dismissed or struck in part. Nor did Hardaway contend at trial or on appeal that the third party claim should have been submitted to the jury on the failure to warn theory but not on the strict liability theory. Finally, Hardaway does not contend that the jury's general verdict is impeachable because it was based on the wrong theory.

ic do not recover a judgment for indemnity against Hardaway, then [Rabon] will recover $20,000 from Automatic and $20,000 from Omark.

On the first day of trial, Hardaway, having learned that Rabon and the defendants had entered into the Mary Carter agreement, moved orally to dismiss Rabon's complaint and to limit the trial to the issue of the defendants' entitlement to indemnity for $40,000 or, alternatively, to limit the amount of any recovery to $40,000. The theory behind Hardaway's motion was that since the Mary Carter agreement limited the defendants' exposure to $40,000, and since an indemnitor is liable only to make the indemnitee whole, Hardaway's liability was also limited to $40,000. The motion was in effect an attempt to plead the agreement as an affirmative defense partially barring the defendants' recovery and to secure from the district court a ruling limiting Hardaway's liability to $40,000 as a matter of law. Although Hardaway did not move to amend its third party answer to add the stated defense as it should have, we will treat Hardaway's motion as having presented to the court the defense that the Mary Carter agreement limited its liability to $40,000.

The district court[9] found that the Mary Carter agreement was clear and unambiguous. The court found further that while the agreement limited the defendants' minimum liability to Rabon to $40,000, the only limitation on the defendants' maximum liability was the extent to which defendants might recover a "judgment for indemnity against Hardaway." Since the agreement did not condition the defendants' maximum liability on their being able to *satisfy* a judgment against Hardaway, the agreement did not fix or limit the defendants' exposure. The court found further that:

> [I]n the event the judgment from which appeal has been taken is affirmed, Defendants will be liable to Plaintiff for the *full* amount of the judgment against

them, and, as clearly spelled out in the Agreement, Plaintiff will satisfy said judgment against Defendants in full; Defendants' payments to Plaintiff in such event will be made under, pursuant to, and in satisfaction of the Final Judgment, rather than the Mary Carter agreement; and it will then be up to Defendants to attempt to satisfy their judgment for indemnity against Hardaway.

> Additionally, in the event the judgment for indemnity is affirmed, the Mary Carter agreement will then become inapplicable, as it only applies, according to its clear terms, if the Plaintiff recovers a judgment against Defendants of less than $40,000 (which he did not), or if Defendants are unsuccessful in seeking a *judgment* for indemnity against Hardaway.

> Should the Defendants for any reason be unable to satisfy their judgment or indemnity against Hardaway in whole or in part, said inability will have no effect whatsoever on Defendants' obligation to satisfy the judgment against them in full.

Based on these findings, the court concluded that, given the defendants' recovery of judgment against Hardaway, the Mary Carter agreement did not limit the defendants' liability, since the defendants are required to satisfy in full Rabon's judgment against them, regardless whether they are later able to collect their judgment against Hardaway. The court therefore denied Hardaway's motion to limit its liability to the defendants to $40,000.

We affirm the ruling of the district court. The Mary Carter agreement limited Omark's and Automatic's liability to Rabon to $40,000 only if (1) Rabon did not recover a judgment against them of at least $40,000 or (2) Omark and Automatic were unsuccessful in their indemnity claim against Hardaway. Neither of those conditions occurred. Under the agreement, Omark and Automatic are liable to Rabon to the full

---

**9.** At trial, the district court initially reserved ruling on Hardaway's motion and then failed to rule on it altogether. We therefore remanded the case so that the court could make its ruling.

The findings of fact and conclusions of law reported in the text comprised the district court's order on remand.

extent of the judgment. The agreement therefore does not limit Hardaway's liability to the defendants.

## III.

### A.

The court admitted in evidence over Hardaway's objection two Occupational Safety & Health Act (OSHA) regulations offered by Automatic. The regulations required (1) that fasteners not be driven into concrete closer than three inches from the edge [10] and (2) that only trained operators use powder actuated tools.[11] The court instructed the jury that it might consider the regulations and their possible violation in connection with the defendants' indemnity claims against Hardaway and that violation of either regulation was negligence.

■ Hardaway urges that the admission of the OSHA regulations in evidence was error. Hardaway's principal contention, that OSHA regulations do not imply a federal cause of action, is inapposite; the record shows clearly that the regulations were introduced as evidence of negligence and not as a basis for an independent cause of action.

■ Hardaway's second argument, that OSHA itself prohibits the introduction of OSHA regulations as evidence of their violators' negligence, is unavailing. Although OSHA creates no private right of action,[12] violation of an OSHA regulation is evidence of negligence or, in appropriate circumstances, negligence per se.[13] *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir. 1981); *see also, National Marine Services, Inc. v. Gulf Oil Co.*, 433 F.Supp. 913, 919–920 (E.D.La.1977), aff'd 608 F.2d 522 (5th Cir. 1979); *Buhler v. Marriott Hotels, Inc.*, 390 F.Supp. 999 (E.D. La.1974).[14] The district court did not err in admitting the regulations in evidence over the objection that OSHA prohibited their introduction.[15]

---

**10.** "Fasteners shall not be driven directly into materials such as brick or concrete closer than 3 inches from the unsupported edge or corner, or into steel surfaces closer than one-half inch from the unsupported edge or corner, unless a special guard, fixture, or jig is used...." 29 C.F.R. § 1910.243(d)(4)(ix)(a) (1974).

**11.** "Only employees who have been trained in the operation of the particular tool in use shall be allowed to operate a powder-actuated tool." 29 C.F.R. § 1926.302(e)(1) (1974).

**12.** OSHA, 29 U.S.C. § 653(b)(4) (1976), provides:
> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

We have read § 653(b)(4) and the legislative history of OSHA to say that OSHA did not create a new private cause of action. *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (5th Cir. 1975) (dictum).

**13.** To establish that the violation of a statute or regulation, including OSHA, is negligence per se, a plaintiff must prove "th[e] violation of a statute which is intended to protect the class of persons to which the plaintiff belongs against the risk of the type of harm which has in fact occurred." *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 709 (5th Cir. 1981), *quoting Marshall v. Isthmian Line, Inc.*, 334 F.2d 131, 134 (5th Cir. 1964). If the plaintiff thus establishes negligence, he must then prove that the violation was the proximate cause of his injury. *Melerine*, 659 F.2d at 710. Since Hardaway does not challenge the jury instruction that violation of either OSHA regulation constituted negligence, we need not decide whether any such violation was negligence per se.

**14.** In this diversity case, federal law governs procedural matters, *Southern Pac. Transp. Co. v. Smith Material Co.*, 616 F.2d 111 (5th Cir. 1980), including the admissibility of evidence. *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950 (5th Cir. 1980).

**15.** We question whether the OSHA regulations were relevant to any issue in this case; they were not relevant to Rabon's claim against Omark and Automatic, since they were not his employer; they were probably not relevant to Omark's and Automatic's indemnity claim against Hardaway, since that action was grounded in Hardaway's obligation to make its workers available for training in the proper use of the stud gun. However, since Hardaway did not object to the admission of the OSHA regulations on such grounds at trial, (or, for that matter, on appeal), we need not decide this question. See Fed.R.Civ.P. 46; *Colonial Refrig-*

### B.

The court admitted into evidence over Hardaway's objection a portion of the deposition of a safety engineer who had occasionally inspected the Amelia Island construction site. The deposition indicated that on one inspection "there might have been some floor and wall openings that needed guarding," that "job site housekeeping should be improved," and that the engineer had seen an employee without safety goggles chipping concrete and another employee using a stud gun without certification. Hardaway contends that the admission of these portions of the deposition was error because the evidence was irrelevant to the accident in issue and was prejudicial and inflammatory.

 Even if the admission of portions of the deposition was error, we hold that the error was harmless. Errors in evidentiary rulings are not reversible unless prejudice results. Fed.R.Civ.P. 61; Fed.R. Evid. 103; *King v. Gulf Oil Co.*, 581 F.2d 1184 (5th Cir. 1978). The improper admission of evidence which is merely cumulative of matters shown by other admissible evidence is harmless error. *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307 (5th Cir. 1978); *American Motorists Ins. Co. v. Landes*, 252 F.2d 751 (5th Cir. 1958). The admission of the reference in the deposition to a Hardaway employee who was using a stud gun without certification may have been error because of the possible lack of connection between that incident and the injury to Rabon. But in light of the abundant evidence that Jackson was using a stud gun without certification on the occasion of Rabon's injury, and that other uncertified employees, including Rabon, were also using stud guns at that time, all of which evidence was introduced without objection, any error in this regard was harmless.

The admission of references to unsatisfactory job site housekeeping and to one failure to wear safety goggles while chipping concrete was, even if error, harmless. Those references constituted twelve lines

*erated Transportation, Inc. v. Mitchell*, 403 F.2d

out of approximately 550 lines of the portion of the safety engineer's deposition that was introduced in evidence; the deposition was one of thirteen that was read to the jury. The references objected to were a mere shred of the totality of the evidence which was presented in the five day trial, and can hardly be said to be dramatic or inflammatory. Moreover, while Hardaway asserts that this evidence inflamed the jury and diverted it from its consideration of the facts of this case, Hardaway does not suggest that any reference to this evidence was made in argument to the jury. Thus, we have no reason to suspect that the evidence had any potential for prejudice or that any attempt was made to put the evidence to prejudicial use.

### IV.

In its final decree, the district court retained jurisdiction of the action for the purpose of awarding attorneys' fees in connection with the defendants' indemnity claims against Hardaway. The court held a hearing on the defendants' motions for fees and costs. Though contesting the defendants' entitlement to fees, Hardaway stipulated that if it were liable for fees, reasonable attorneys' fees would be $20,481.00 for Omark and $13,354.80 for Automatic. The court subsequently granted the defendants' motions for fees in the stated amounts, rejecting Hardaway's contention that the defendants' entitlement to fees should have been tried to the jury. Hardaway now urges that the district court erred by awarding fees without having submitted the question to the jury.

 The district court ruled correctly that the question of attorneys' fees was not for the jury. In Florida, the prevailing party in an indemnity action is entitled as a matter of law to reasonable attorneys' fees incurred in defense of the principal claim. *Borg-Warner Acceptance Corp. v. Philco Finance Corp.*, 356 So.2d 830 (Fla. 1st Dist.Ct. App.1978); *Pender v. Skillcraft Industries, Inc.*, 358 So.2d 45 (Fla. 4th Dist.Ct.App.

541, 552 (5th Cir. 1968).

1978). Although the amount of a reasonable fee is a jury question, Hardaway's stipulation to the reasonableness of the amounts awarded removed that question from dispute.

AFFIRMED.