GEARY DISTRIBUTING COMPANY, INC., Plaintiff–Appellee, Cross–Appellant,

v.

ALL BRAND IMPORTERS, INC., Defendant–Appellant, Cross–Appellee.

No. 89–3593.

United States Court of Appeals, Eleventh Circuit.

May 22, 1991.

---

1. "Whereby he lost the service [of his servant]." Black's Law Dictionary 1028 (5th ed.1979).

Richard M. Blau, Stacy D. Blank, Holland & Knight, Tampa, Fla., for defendant-appellant, cross-appellee.

David H. Simmons, Thomas F. Neal, Drage, deBeaubien, Knight & Simmons, Orlando, Fla., for plaintiff-appellee, cross-appellant.

Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

This appeal involves the retroactive application of Florida's beer distribution statute, Fla.Stat. § 563.022, to an existing alcoholic beverage distribution contract between All Brand Importers, Inc. (All Brand) and Geary Distributing Company, Inc. (Geary). The district court held that the beer distribution statute could be retroactively applied to the contract between All Brand and Geary and that All Brand had violated the statute by unreasonably withholding its consent to a proposed assignment by Geary of its rights under the contract. The court awarded Geary compensatory damages, interest and attorneys' fees totalling $114,351.22. Both All Brand and Geary appeal.

## I. FACTS AND PROCEDURAL HISTORY

All Brand is a New York corporation in the business of supplying alcoholic beverages at wholesale to distributors in several

states including Florida. Geary is a Florida corporation that did business as a distributor of alcoholic beverages in Orange, Volusia and Brevard Counties in Florida. In 1978, Geary and All Brand entered into an oral agreement that authorized Geary to distribute All Brand products, including Foster's Lager and Moosehead beer. The distribution agreement was in effect until 1987, when the present dispute arose. There was no written agreement evidencing the terms of the oral agreement. In 1984, All Brand signed a proposed written agreement, but Geary refused to sign. Both parties maintain that this written document reflects the content of their oral agreement, except for a provision concerning exclusivity of the distributorship. A copy of the 1984 document is attached as Appendix A to this opinion.

In 1985, Geary ceased its operations in Orange County and sought to assign its distributorship rights for Orange County to Jim Taylor Corporation. Geary, pursuant to its oral agreement with All Brand, asked All Brand to consent to the assignment of distributorship rights. All Brand, after reviewing Taylor's qualifications, eventually consented to the assignment.

Later, Geary sought to assign its distributorship rights for Volusia County to Central Florida Distributors. Geary asked that All Brand consent to the assignment. All Brand, after reviewing Central Florida Distributors' qualifications, consented to this assignment also.

Then in September 1987, Geary requested All Brand's consent to Geary's assignment of the distribution rights for Brevard County to Grantham Distribution Company. According to the terms of an agreement between Geary and Grantham, Geary would receive an additional $75,000 if Geary could ensure Grantham that it would be designated All Brand's distributor for Brevard County. All Brand refused to consent to the assignment to Grantham. All Brand maintains that it had a number of valid business reasons for refusing to consent to this assignment.

After All Brand refused to consent to the assignment to Grantham, Geary filed this action in the Circuit Court of Orange County, Florida. Geary alleges that All Brand unreasonably withheld consent to the assignment. Geary relies upon a recently enacted Florida statute, Fla.Stat.Ann. § 563.022 (West Supp.1990) (the beer distribution statute), as the principal basis for its cause of action.[1] The beer distribution statute provides that a manufacturer may not unreasonably withhold consent to the assignment of distribution rights. *See* Fla. Stat.Ann. § 563.022(5)(b)(7) (West Supp. 1990).

All Brand removed the case to federal court and answered Geary's complaint by asserting that Florida's statute of frauds, Fla.Stat.Ann. § 725.01 (West 1988), precludes this cause of action and that retroactive application of the beer distribution statute would violate the Florida Constitution's contract clause,[2] and the United States Constitution's contract clause.[3] Geary maintains that the beer distribution statute supersedes the statute of frauds and controls this cause of action.

The district court agreed with Geary and held that the beer distribution statute supersedes the Florida statute of frauds and is the controlling statute in the case. In making that determination the district court concluded that the beer distribution statute could be applied retroactively without violating the United States Constitution's contract clause. The court, however, failed to explicitly address All Brand's contention that the retroactive application of the beer distribution statute would violate the Florida Constitution's contract clause.

---

**1.** Geary also had other theories to support its cause of action. Because the district court did not address them, we do not address them.

**2.** The Florida Constitution's contract clause provides, in pertinent part:

No ... law impairing the obligation of contracts shall be passed.

Fla. Const. art. I, § 10.

**3.** The United States Constitution's contract clause provides, in pertinent part:

No State shall ... pass any ... Law impairing the Obligation of Contracts....

U.S. Const. art. I, § 10, cl. 1.

After a bench trial, the district court found that All Brand had unreasonably withheld consent to the assignment. The court awarded Geary $75,000 in compensatory damages, $14,351.22 in interest, and $25,000 in attorneys' fees. No evidentiary hearing was held on Geary's request for attorneys' fees. Both parties appeal.

## II. CONTENTIONS OF THE PARTIES ON APPEAL

All Brand contends that the district court erred by retroactively applying the beer distribution statute, Fla.Stat.Ann. § 563.022, to the contract at issue in this case. Geary contends that the district court erred by failing to conduct an evidentiary hearing to determine the amount of attorneys' fees to be awarded in this case.

## III. DISCUSSION

The district court ruled that retroactive application of the beer distribution statute does not violate the United States Constitution's contract clause. We need not address this question because we hold that retroactive application of the beer distribution statute violates the Florida Constitution's contract clause.[4]

The Florida Constitution provides that "[n]o ... law impairing the obligation of contracts shall be passed." Fla. Const. art. I, § 10. The correct interpretation of this provision of the Florida Constitution is a question of Florida law. "Therefore, federal courts are required to construe the [Florida Constitution] ... as would the Supreme Court of Florida." *Royal Health Care Servs., Inc. v. Jefferson–Pilot Life Ins. Co.*, 924 F.2d 215, 216 (11th Cir.1991). Where the Supreme Court of Florida has

not addressed a particular issue, federal courts are then bound by the decisions of the Florida district courts of appeal that address the disputed issue, unless there is an indication that the supreme court would not adhere to the district court's decision. *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1257 n. 14 (11th Cir.1988); *Rabon v. Automatic Fasteners, Inc.*, 672 F.2d 1231, 1235 n. 7 (5th Cir. Unit B 1982).[5]

We now turn to the substantive question at hand: whether the beer distribution statute can be applied retroactively to a contract entered into before the statute's enactment. The Supreme Court of Florida has not addressed the retroactivity of this particular statute, but an intermediate appellate court in Florida has. In *Gans v. Miller Brewing Co.*, 560 So.2d 281 (Fla. 4th Dist.Ct.App.1990), the Florida Fourth District Court of Appeal held that retroactive application of the beer distribution statute violates the Florida Constitution's contract clause.

In *Gans*, the Miller Brewing Company and Douglas Kerr had entered into a contract that authorized Kerr's company, the Huber Distributing Company, to distribute Miller's products. The contract provided that Kerr could not assign the distributorship rights without the written consent of Miller. Thereafter Kerr agreed to assign his distribution rights under the contract to Robert Gans. Miller refused to consent to the assignment and Kerr's distribution rights were not assigned to Gans. Gans, relying upon the beer distribution statute, Fla.Stat. § 563.022, sued Miller for unreasonably withholding consent to the assignment. The court held that the "suit would violate the Florida Constitution, Article I,

**4.** Although the wording of both contract clauses is almost identical, the interpretation of the clauses has not been identical. The Supreme Court of Florida stated that "this Court, when construing a provision of the Florida Constitution, is not bound to accept as controlling the United States Supreme Court's interpretation of a parallel provision of the federal Constitution." *Pomponio v. Claridge of Pompano Condominium, Inc.*, 378 So.2d 774, 779 (Fla.1979). In *Pomponio*, the Supreme Court of Florida adopted an approach to the Florida contract clause that the court termed "similar" to that of

the United States Supreme Court's approach to the federal contract clause. *Id.* at 780. Although the approach is similar, Florida courts interpreting the Florida contract clause appear to tolerate less impairment than the federal courts interpreting the federal contract clause. *See id.*

**5.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit.

§ 10. The written contract in question predated the enactment of section 563.022 and said contract gave Miller the right to approve any sale of the Huber distributorship." *Gans,* 560 So.2d at 283. Because *Gans* is a decision of a Florida district court of appeal, we are bound by that decision unless there is an indication that the Supreme Court of Florida would decide the issue otherwise. *Maseda,* 861 F.2d at 1257 n. 14; *Rabon,* 672 F.2d at 1235 n. 7.

Any review of the Supreme Court of Florida's interpretation of the Florida Constitution's contract clause must begin with *Yamaha Parts Distribs., Inc. v. Ehrman,* 316 So.2d 557 (Fla.1975). In rejecting the contention that the legislature may retroactively lengthen the notice required to terminate a franchise agreement, the court noted that "[v]irtually no degree of contract impairment has been tolerated in this state." *Id.* at 559. The court stated that "the state's interest in policing franchise agreements and other manifestations of the motor vehicle distribution system is not so great as to override the sanctity of contracts." *Id.*

The supreme court expanded upon *Yamaha* in *Pomponio v. Claridge of Pompano Condominium, Inc.,* 378 So.2d 774 (Fla. 1979). The *Pomponio* court stated that "our conclusion in *Yamaha* that 'virtually' no impairment is tolerable necessarily implies that some impairment is tolerable, although perhaps not so much as would be acceptable under traditional federal contract clause analysis." *Id.* at 780. The court went on to develop a balancing test similar to the one used in federal contract clause analysis. The court stated that "we must weigh the degree to which a party's contract rights are statutorily impaired against both the source of authority under which the state purports to alter the contractual relationship and the evil which it seeks to remedy." *Id.*

The beer distribution statute impairs this contract in several ways. The most significant contract impairment is that the statute imposes the restriction that All Brand cannot unreasonably withhold consent to an assignment of distributorship rights. The district court found that this restriction does not impair the contract because the common law of Florida prohibits All Brand from unreasonably withholding consent to the assignment.[6]

In concluding that the common law of Florida requires that consent to assignments not be unreasonably withheld the district court relied on several landlord/tenant cases. Such cases are unpersuasive when dealing with franchise or distributorship contracts. There is a distinct difference in the relationship between a landlord and tenant and a franchisor and franchisee. A franchisor is markedly more concerned with a franchisee's qualifications, business conduct, and marketing techniques than is a landlord with a tenant's business.

■ Florida law does not permit assignment of distributorship contracts unless the contract specifically provides for assignments. *See Parker v. Evening News Pub. Co.,* 54 Fla. 544, 45 So. 309 (1907); *see also Clinton Foods, Inc. v. Frozen Foods, Inc.,* 130 F.Supp. 422 (S.D.Fla.1955). Thus, because assignments in this area are not favored, we would be reluctant to conclude that consent to an assignment could not be unreasonably withheld by a party to the contract.

The beer distribution statute also impairs the contract by requiring the reasonableness of the consent to be based on the qualifications of Florida distributors only rather than on national standards. *See* Fla.Stat.Ann. § 563.022(2)(j) (West Supp. 1990). The statute further impairs the contract by providing that the franchisor, not the franchisee, bears the burden of proving that consent was withheld reasonably. *See id.* at § 563.022(8). Finally, the statute impairs the contract by allowing the prevailing party in a cause of action under the statute to be awarded reasonable attorneys' fees. *See id.* at § 563.022(18)(c).

---

**6.** This court, like the district court, is unable to locate any reported cases establishing this as the common law of Florida. The only Florida case mentioning the issue explicitly stated that it was not deciding the question. *See Troup v. Meyer,* 116 So.2d 467 (Fla. 3rd Dist.Ct.App.1959).

 Having concluded that the statute impairs the contract, we must now determine the state's authority for the statute and the evil the statute seeks to remedy. The state's authority for the statute comes not from the Twenty–First Amendment to the United States Constitution,[7] as Geary contends, but rather from its inherent police power. The Twenty–First Amendment allows a state to circumvent only federal constitutional provisions, not state constitutional limitations. *See California v. La Rue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Park Benziger & Co. v. Southern Wine & Spirits, Inc.*, 391 So.2d 681, 683 (Fla.1980); *see also Bellanca v. New York State Liquor Auth.*, 54 N.Y.2d 228, 429 N.E.2d 765, 445 N.Y.S.2d 87 (1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *Heublein, Inc. v. Department of Alcoholic Beverage Control*, 237 Va. 192, 376 S.E.2d 77 (1989). Thus, the state's authority for the statute is its inherent police power to regulate commercial activity within its borders. The evil the statute seeks to eliminate is unfair business practices by franchisors that restrict the distribution of malt beverage products to the public.

 In balancing the impairment of the contract against the authority for the statute and the evil it seeks to eradicate, we conclude that the Supreme Court of Florida would find the impairment is significantly greater than necessary. As stated by the supreme court in *Yamaha*, "the state's interest in policing franchise agreements and other manifestations of the ... [malt beverage] distribution system is not so great as to override the sanctity of contracts." *Yamaha*, 316 So.2d at 559. Although the preservation of Florida's supply of malt beverages is an important goal, it is not enough to outweigh the impairment wrought by the statute. We conclude that

there is no indication that the Supreme Court of Florida would decide the question differently. The *Gans* decision, therefore, controls this case.

## IV. CONCLUSION

We conclude that the district court erred by ruling that the beer distribution statute could be retroactively applied to the contract at issue. We VACATE the district court's final judgment, including the award of attorneys' fees, and REMAND for proceedings consistent with this opinion.[8]

VACATED and REMANDED.

## APPENDIX A

### DISTRIBUTOR AGREEMENT

AGREEMENT, dated as of March 15, 1984, by BRAND IMPORTERS, INC., ("ABI"), a New York corp principal place of business at 625 Madison Aven New York 10022, and GEARY DIST. CO., with a pla 420 Shearer Boulevard, Cocoa, Florida 32922 ("

### WITNESSETH:

WHEREAS, ABI is the owner of authorized United States importer and distributor of the brands of malt beverages listed in Schedule A (the "Products"); and

WHEREAS, DISTRIBUTOR is a duly licensed wholesaler of malt beverages in the State of Florida; and

WHEREAS, ABI desires to appoint DISTRIBUTOR as a distributor of the Products upon the terms and conditions hereinafter set forth; and

WHEREAS, DISTRIBUTOR desires to accept such appointment upon such terms and conditions;

NOW, THEREFORE, in consideration of the mutual covenants and agreements here-

---

7. The Twenty–First Amendment to the United States Constitution provides, in pertinent part:
 The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.
 U.S. Const. amend. XXI, § 2.

8. In light of our holding that the beer distribution statute cannot be retroactively applied to the contract at issue, it necessarily follows that the award of attorneys' fees to Geary under the beer distribution statute must be vacated.

 Geary's motion for attorneys' fees on appeal is denied.

in contained, it is agreed by the parties as follows:

### 1. Appointment

ABI hereby appoints DISTRIBUTOR as a non-exclusive distributor of the Products listed in Schedule A, in the territory listed in Schedule B. DISTRIBUTOR may not appoint sub-distributors of the Products, except upon the prior written consent of ABI. ABI reserves the right at any time on sixty (60) days prior written notice to DISTRIBUTOR to revise the territory and appoint direct distributors in some or all counties. ABI also reserves the right at any time in its sole discretion to allocate available supplies of the Products among its various customers, including DISTRIBUTOR.

### 2. Prices

The prices of the Products to the DISTRIBUTOR shall be the prices established by ABI from time to time and in effect at the time of shipment. ABI reserves the right to change its prices at any time upon written notice to DISTRIBUTOR as permitted by law.

### 3. Orders

All orders are subject to acceptance by ABI at the address first above written, or at such other addresses as may be designated by ABI from time to time. Unless otherwise specified in writing by ABI all quantities of the Products ordered by DISTRIBUTOR hereunder for shipment on a direct import basis will be sold to DISTRIBUTOR F.O.B. Aqua Gulf Corporation's Bayonne, New Jersey warehouse, or such other plant or warehouse designated by ABI from time to time, with title and all risk of loss or damage passing to DISTRIBUTOR (1) in the case of direct import shipments, when the goods pass over the ship's rail at the foreign port of embarkation, or (2) in the case of all other shipments, when the goods are loaded aboard trucks or other carriers at the ABI plant or warehouse or other designated delivery point.

### 4. Payment Terms

Payment for the Products shipped to DISTRIBUTOR hereunder shall be as established by ABI from time to time in accordance with applicable law.

### 5. Distributor's Undertaking

DISTRIBUTOR agrees at all times hereunder to use its best efforts diligently and vigorously to promote the sale of each of the Products, which effort shall, without limitation, include the following undertakings:

(a) To maintain a competent and trained sales force assigned to the Products sufficient in size to provide effective selling effort in substantially all retail outlets in all areas customarily serviced by DISTRIBUTOR;

(b) To exert at least as much selling effort on behalf of the Products as is exerted by DISTRIBUTOR on behalf of all other brands of malt beverage products sold by DISTRIBUTOR;

(c) To maintain sufficient inventories of the Products to fulfill all reasonably foreseeable requirements therefor of retailers in the areas customarily serviced by DISTRIBUTOR;

(d) To maintain sufficient delivery vehicles in good operating condition, and sufficient delivery personnel, to ensure timely delivery of all retailer orders for the Products;

(e) To promote adequately the sale of the Products by means of lawful advertising and sales promotion activities; provided, however, that the DISTRIBUTOR agrees not to use any advertising or promotional material in connection with the sale of the Products until such material has been submitted to and approved in writing by ABI.

(f) To maintain in effect at all times during the term of this Agreement a wholesaler's beer license in accordance with the requirements of the Florida Beverage Law, as the same may be amended or superseded, from time to time.

The parties hereby acknowledge that failure by DISTRIBUTOR to fulfill each

and every obligation of DISTRIBUTOR contained in this Paragraph 5 shall constitute just and sufficient cause for termination of this Agreement by ABI, with due regard for the equities of the parties under the law of the State of Florida.

### 6. Visits by ABI

The DISTRIBUTOR shall permit officers and employees and designated representatives of ABI to visit and inspect the DISTRIBUTOR's facilities and, to the extent permitted by law, to accompany DISTRIBUTOR's personnel and representatives on sales and other calls relating to the distribution, advertising and promotion of the Products.

### 7. Relationship

The relationship between the DISTRIBUTOR and ABI shall be that of an independent buyer and seller. No employee or customer of the DISTRIBUTOR shall be deemed thereby to be an employee or customer of ABI nor shall the DISTRIBUTOR have any authority to make representations on behalf of ABI or to obligate it in any way to third parties.

### 8. Trademark Ownership and Use

The DISTRIBUTOR shall sell and advertise the Products only under the trademarks regularly applied to the Products by ABI, or by ABI's suppliers. The DISTRIBUTOR shall not use any of such trademarks as part of any corporate name or of any trade name. Upon termination of this Agreement, the DISTRIBUTOR shall immediately cease all use of such trademarks or trade names except as may be required in connection with the sale of any remaining inventory of the Products if ABI does not purchase such inventory in accordance with the option given it under paragraph 14 of this Agreement.

DISTRIBUTOR acknowledges that it has not heretofore acquired, and will not acquire by reason of this Agreement or the distributorship created hereunder, any rights in or to any trademarks or trade names, registered or unregistered, owned or used by ABI or ABI's suppliers or used by others under authorization from ABI. If DISTRIBUTOR has acquired or at any time by any means hereafter acquires any rights in or to any such trademark or trade name, it will promptly, upon request, assign all such rights to ABI or, at ABI's request, to ABI's supplier. This provision shall survive the termination of this Agreement. DISTRIBUTOR will not at any time use or apply for registration of any such trademark or trade name.

DISTRIBUTOR agrees to notify ABI promptly of any use by others of trademarks identifying Products represented by ABI, or of any other trademark covering any of the Products, which constitutes or could appear to constitute an infringement or passing off of any such trademark in the Territory. However, ABI shall have the sole right to decide whether or not legal proceedings or other action shall be brought or taken in connection with such use. If any such proceedings or other action are brought or taken, DISTRIBUTOR agrees to cooperate fully with ABI in the prosecution thereof. ABI shall assume all of the burden and be entitled to receive all of the benefits of any such proceeding or other action.

### 9. Reports by DISTRIBUTOR

DISTRIBUTOR will periodically provide ABI with such reports as ABI may reasonably request, including, but not limited to monthly reports of inventories, sales and depletions of the Products in the Territory. ABI shall have the right at any time and from time to time to conduct a physical inventory of the Products in DISTRIBUTOR's inventory.

### 10. Compliance with Law

DISTRIBUTOR agrees at all times during the term of this Agreement to comply with all federal, state and local laws and regulations applicable to its performance hereunder.

### 11. Term

This Agreement shall continue in effect until terminated as provided herein.

(A) Either party may terminate this Agreement forthwith upon the occurrence of any one or more of the following events:

(1) The appointment of a trustee, receiver or other similar custodian for all or any substantial part of the other's property.

(2) The filing of a petition by the other, or any answer not denying jurisdiction, in a bankruptcy, under Chapter XI of the Federal Bankruptcy Act, or any similar law, state or federal, whether now or hereafter existing, or if any such petition is filed against the other and not vacated or stayed within fifteen (15) days of such filing.

(3) The making by the other of an assignment for the benefit of creditors.

(4) The actual suspension or loss, by the other, of any federal or state license required for the operation of its business, whether lost through revocation, failure to renew or suspension, for a period of sixty (60) continuous days or more.

(5) The sale or transfer of substantially all of the physical assets, or a majority of the stock, or ownership or control of the business of the other.

(6) The insolvency of the other.

(7) Breach of, or default under this Agreement by the other.

(8) Non-payment by the other when due of any monies due and payable under this Agreement.

(9) Any other event which constitutes good cause for termination of this Agreement under the laws or regulations of the State of Florida.

## 12. Orders Following Notice of Termination

During the remaining term of this Agreement (if any) after the DISTRIBUTOR or ABI has given notice of termination, ABI shall not be obligated to sell to the DISTRIBUTOR a total quantity of any of the Products in any one month greater than the average monthly quantity of that Product shipped to the DISTRIBUTOR during the six months immediately preceding the month in which the termination notice was given.

## 13. Return Authorization

Merchandise returned for reasons of quality complaints are subject to examination by ABI. ABI will not honor such claims caused by events that originated after the Products passed from ABI's or ABI's supplier's control. ABI reserves the right to reject claims that do not comply with all applicable federal and state laws.

## 14. Effect of Termination

A. Termination of this Agreement for any reason shall not affect any other rights or remedies, or any obligations which either party may have in connection with this Agreement at the time the termination becomes effective, whether such rights, remedies, or obligations are accrued, contingent, absolute, or otherwise at that time.

B. Upon termination of this Agreement for any reason, ABI shall have the right and option, but not the obligation, to purchase from the DISTRIBUTOR any part or all of the marketable Products which the DISTRIBUTOR has on hand at the time the termination becomes effective. The purchase price for such Products shall be the net price paid therefor by DISTRIBUTOR and the actual cost to the DISTRIBUTOR of shipping them to its facilities in the Territory. In connection with any such purchase, ABI may direct the DISTRIBUTOR to ship, at ABI's expense, such Products to another destination designated by ABI.

## 15. Force Majeure

ABI shall not be responsible for any liability, loss or damage to the DISTRIBUTOR due to any failure to ship or any delay in shipping accepted orders due to strikes, inability to obtain transportation, or any causes beyond AB s control, or by reason of ABI's having ceased to sell or distribute the Products involved, nor shall ABI be responsible for failure of delivery or delay due to federal, state or other governmental statute, regulation or authority.

### 16. *Assignment*

This Agreement and the distributorship created thereunder are personal to DISTRIBUTOR and may not be assigned nor the obligations imposed by it delegated in whole or in part, in fact or by operation of law, without the prior written consent of ABI, provided, that ABI may assign this Agreement to any of its subsidiaries or affiliates, or to the successors or assigns of all or substantially all of its business.

### 17. *Notices*

Any notice required or permitted to be given under this Agreement by one of the parties to the other shall be deemed to have been sufficiently given for all purposes if mailed by registered or certified mail, postage prepaid, addressed to such party at the address first above written or such other address as the addressee shall have theretofore furnished in writing to the addressor.

### 18. *Non–Waiver*

Failure by either party to exercise promptly any option or right herein granted to it or to require strict performance of any obligation herein imposed on the other shall not be deemed to be a waiver of such rights.

### 19. *Scope of Agreement*

This Agreement constitutes the entire agreement between ABI and DISTRIBUTOR and supersedes all prior agreements and understandings. It may be modified only by an instrument in writing signed by both parties.

IN WITNESS WHEREOF, this Agreement has been duly executed as of the date first above written.

ALL BRAND IMPORTERS, INC.

By: /s/ Joseph M. Tighe

Title: Vice President–National Sales

GEARY DIST. CO.

By: ——————————————

Title: ——————————————

SCHEDULE A TO DISTRIBUTOR AGREEMENT BY AND BETWEEN ALL BRAND IMPORTERS, INC. AND GEARY DIST. CO.

Carlsberg Lager

Carlsberg Elephant Malt Liquor

Foster's Lager

Mackeson Triple Stout

Moosehead

Noche Buena

Pilsner Urquell

Whitbread Ale

Whitbread Kegs

SCHEDULE B TO DISTRIBUTOR AGREEMENT BY AND BETWEEN ALL BRAND IMPORTERS, INC. AND GEARY DIST. CO.

COUNTIE OF: Brevard