**In re DREW P. by Next Friend,
Plaintiff–Appellee,**

v.

**CLARKE COUNTY SCHOOL DISTRICT, Defendant–Appellant.**

**Nos. 88–8031, 88–8124.**

United States Court of Appeals,
Eleventh Circuit.

July 20, 1989.

Andrew H. Marshall and Erwin, Epting, Gibson & McLeod, Athens, Ga., for defendant-appellant.

B. Andrew Prince and Robert J. Reed Law Office, Athens, Ga., for plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and HOEVELER *, District Judge.

HOEVELER, District Judge.

This appeal involves an action brought against the Clarke County School District, Clarke County, Georgia (the "school district" or "CCSD"). Plaintiff Drew P. is a child diagnosed as both autistic and severely mentally retarded. He sues through his parents and next friends who contend that the school district has failed to comply with the Education for All Handicapped Children Act (the "EHA" or the "Act"), 20 U.S.C. sections 1400–1485 (1982 & Supp. IV 1986). The primary issue this case presents is a question of statutory interpretation: whether EHA requires a school district to provide a child handicapped with infantile autism and severe mental retardation residential treatment in a facility for autistic children until the age of twenty-one.

*Background*

Drew P. is an autistic and severely mentally retarded sixteen year old who exhibits many of the behavior patterns common to autistic children.[1] Drew was diagnosed as suffering from infantile autism and mental retardation when he was three. At that time, the diagnostician at Emory University recommended residential placement. Instead, Drew entered the CCSD special education program at the age of five, where he remained until January, 1985. Drew spent his second year in the CCSD in the Georgia

---

* Honorable William M. Hoeveler, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The district court judge's findings of fact indicate that Drew is distant in his relationships with people, communicates by primitive sign language, has difficulty in coping with changes in his environment, is becoming increasingly aggressive and cannot be left unattended. *In Re*

*Drew P. v. Clarke County School District*, 676 F.Supp. 1559, 1561 (M.D.Ga.1987). These symptoms correspond with the definitions of autism issued by the National Society for Autistic Children. *Id.* The judge concluded that the evidence from state administrative hearings and the trial indicated that Drew had, throughout his lifetime, exhibited many of the behaviors characteristic of autism. *Id.*

Retardation Center, a residential treatment center. That was the only year in which he received training from an individual experienced in working with autistic children.

In June, 1984, Drew's parents applied to the Georgia Community Health–Mental Retardation Center (the "Center") for Drew's placement in a residential center. The Center concluded that Drew should remain with CCSD, although it recommended placement in a developmental training home with interim care by an in-home trainer. No such developmental training home was established. The school district did provide Drew with an in-home trainer in the fall of 1984, but with limited success.[2]

Drew became increasingly aggressive at home and began to perform differently at home than at school. He failed to transfer what he learned in school to the home environment, became unable to perform tasks listed in his individualized education plan ("IEP") at home, and was failing to achieve the goals set by his IEP. In January, 1985, Drew's parents withdrew him from CCSD and placed him in the Parkwood Developmental Center ("Parkwood"), a residential center for the severely mentally retarded.

While at Parkwood, Drew was evaluated by Dr. Margaret Hiers, an educational consultant with a doctorate in mental retardation. Dr. Hiers and the Parkwood staff concluded that Drew was not receiving the optimum educational benefit at Parkwood and recommended placement in a residential center with facilities for autistic children. No such center existed in the state of Georgia.

Because the CCSD refused to accept responsibility for the costs of the Parkwood placement, Drew's parents requested an administrative hearing on the matter. On April 12, 1985 a hearing was held. The regional hearing officer determined that Drew did not require residential placement in a facility for autistic children, thus obviating any requirement that the CCSD reimburse Drew's parents for the costs of residential treatment. On appeal, the state hearing officer sustained the regional officer's holding. Following the final decision of the state hearing officer, plaintiffs filed suit in federal district court.

In the meantime, Drew had been placed in a residential center for autistic children in Tokyo, Japan. He was there from September, 1985 until August, 1987. Thereafter, Drew was transferred to the Japanese school's newly opened sister-school in Boston, MA for the 1987–88 school year.

The district court determined on December 23, 1987 that Drew P.'s educational needs could not be met by the programs available in the Georgia school district. The court held further that for Drew to receive a "free and appropriate education," as required under the Act, the Clarke County School District must either place Drew P. in a residential treatment facility for autistic children until the age of twenty-one, or provide funds for such placement.

By separate order, the court awarded Drew's parents partial reimbursement for the costs of residential treatment centers in Tokyo and Boston and attorney's fees. The court found, and the plaintiffs conceded, that the placement at Parkwood was not reimbursable because it was not an appropriate placement. The plaintiffs were awarded the sum of $42,637.00, representing tuition, school fees and uniform fees paid by the plaintiffs for Drew's placement in the residential facilities in Tokyo and Boston. Costs for travel and lodging were excluded. In addition, the court awarded the plaintiffs $8,500.00 in attorney's fees. The school district appealed. For the reasons stated below we affirm.

*Discussion*

The EHA requires that states receiving federal funds effect "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. section 1412(1). An appropriate education is defined under the statute as one "designed ... to meet the unique needs of a handicapped child." 20 U.S.C. section

---

**2.** The trainer testified at trial that during the time she was with Drew he could not be guided by verbal command, and required constant supervision. *In re Drew P.,* at 1562.

1401(a)(16). States receiving federal funding under the EHA must tailor programs for handicapped children to the unique needs of each child by means of an individualized educational program ("IEP"). Section 1401(a)(18). Each IEP must be developed by the concerted action of the local educational agency, the child's teacher and the child's parents or guardian, and must be reviewed annually by the local or regional educational agency. 20 U.S.C. sections 1401(a)(19), 1414(a)(5). Parents must be notified of any changes in the evaluation or placement of the child. Section 1415(b)(1)(D). Parents may bring a complaint pertaining to the evaluation at a due process hearing, and have the right to appeal to the state educational agency and subsequently to a state court of competent jurisdiction or to a federal district court. Sections 1415(b)(1)(E), (b)(2), (c).

■ The district court considered the state administrative officers' findings that residential treatment in a center for autistic adolescents was not necessary for Drew P. and found to the contrary: the district judge determined that Drew could not receive an appropriate education and care for his particular needs without residential treatment.[3] The district court, applying the preponderance of the evidence test, determined that the evidence presented by the school board regarding the appropriateness of its IEP was outweighed by expert testimony that a residential treatment center for autistic children was necessary in order for Drew to receive an educational benefit.[4]

The school district appeals this finding based on its argument that the school district was not required to maximize Drew's potential, but only to give him access to free public education. The state must provide the child only with "a basic floor of opportunity." *Board of Education v. Rowley*, 458 U.S. 176, 201, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982). CCSD argues that its program provided Drew with such a floor of opportunity. Its expert psychologist, Dr. Peter Thomas, testified that residential placement was not necessary. CCSD claims that under *Rowley*, it is not required to maximize the potential of each child, and that therefore, residential treatment though perhaps optimum placement for the child, was not required under the Act. However, testimony by Dr. Lee Marcus, an expert psychologist recognized by both parties, indicated that residential placement was necessary in order for Drew to receive *any* educational benefit. Furthermore, Dr. Marcus testified that Drew must be educated by teachers specially trained in working with autistic children.

■ The trial judge recognized that *Rowley* provided the correct legal standard. Nevertheless, he explicitly held that this standard was not met by the CCSD educational program. In order to satisfy its duty to provide a free, appropriate education, a state must provide personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. *Jefferson County Board of Education v. Breen*, 853 F.2d 853, *reh'ng den.* 864 F.2d 795 (11th Cir. 1988). Thus, in order for the CCSD to discharge its duty toward Drew, it must provide him with a setting in which he can receive an educational benefit.

■ The evidence at trial demonstrated that autistic children require constant,

---

**3.** The extent of deference to be given to the administrative findings of fact is left to the discretion of the district court. *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, *reh'ng den.* 864 F.2d 795 (11th Cir.1988). The district court must consider the administrative findings of fact, but is free to accept or reject them. *Id.*

**4.** This expert testimony included that of Dr. Hiers as well as Dr. Lee Marcus, a psychologist and the clinical director of an autistic diagnostic and counseling center associated with the University of North Carolina School of Medicine, where Dr. Marcus is a faculty member. The district court pointed out that both parties agree that Dr. Marcus is an authority on the education of autistic children. *In re Drew P.,* at 1564. Dr. Marcus, in a post-trial telephonic interview by the court, in which both attorneys participated, stated that in order for Drew P. to achieve educational progress, he would need residential treatment. *Id.* at 1565. Residential treatment was a necessity rather than an optimum situation for Drew, according to Dr. Marcus' testimony. *Id.*

round the clock, expert educational supervision in order to progress. Expert testimony established that Drew, as an increasingly withdrawn autistic teenager, needed placement in such a residential center specializing in the treatment of autistic adolescents. As indicated, testimony by Dr. Marcus made clear that residential placement was necessary in order for Drew to receive *any* educational benefit.

The school board challenges the district court's finding that residential treatment in a center for autistic children is necessary to provide Drew P. with an appropriate education. Although the board contends that the special educational programming afforded Drew was meaningful, individualized and provided under a small staff to student ratio by experienced professionals, there was ample evidence at trial to demonstrate that these professionals were untrained in the special needs of autistic children. Moreover, given the opinions of Dr. Hiers and the Parkwood staff as well as the videotaped and telephonic testimony of Dr. Lee Marcus that residential treatment was necessary for Drew to make meaningful educational progress, the district court's findings are not clearly erroneous. There is sufficient evidence to support the court's findings that CCSD did not provide a basic floor of educational opportunity to Drew.

■ A second issue on appeal is whether the trial court correctly determined that Drew's parents should be reimbursed for the past expense of private placement in the Tokyo and Boston schools. Reimbursement under the EHA is proper if the court determines the child's placement is proper. *Burlington School Comm. v. Dept. of Education*, 471 U.S. 359, 370, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). Appellant claims that the court erred in determining that Drew's placement in Tokyo and Boston schools was proper. The school district argues that the court below lacked reliable information on which to assess the schools. The problem with this argument, however, is that Georgia itself did not recognize autism as a discrete and separate disorder and therefore had failed to establish standards for the treatment of autistic children. (Brief of Appellees at 19). Because the district judge found that Drew's parents were justified in placing him in the residential facilities, he had the authority to order reimbursement for their costs for the facilities under consideration and for attorneys fees. *Jenkins v. Florida*, 815 F.2d 629 (11th Cir.1987).

The district court was troubled by the choice of a residential center 8,000 miles away, but was equally troubled by Georgia's failure to recognize autism as a separate disability and the absence of an appropriate facility within the state. Due to concern over the choice of a Tokyo location, the court ordered Drew's parents to submit an itemized statement of the costs incurred in placing Drew in school in Tokyo and Boston. In the court's supplemental order of February 18, 1988, the district judge found that the school district should reimburse plaintiffs in the amount of $42,637.00 for the expenses they incurred in obtaining residential treatment for Drew and $8,500 for attorney's fees, amounts representing only part of what plaintiffs sought.

■ The third issue the appellant raises is whether the trial court abused its discretion in requiring a residential placement until Drew reaches age twenty-one. Appellant's argument appears to be based on the erroneous idea that the court ordered Drew's unconditional placement in a residential facility until the age of twenty-one. Rather, the court specifically required an annual IEP meeting in conformance with the EHA and provided that if Drew no longer needed residential placement the new IEP would control. (Order of February 18, 1988, Rl–37–4, 5). The court stated that if at the statutorily mandated yearly individualized educational program ("IEP") meetings the school district can demonstrate that Drew no longer needs residential placement, the court will not interfere with that decision.

■ The fourth issue on appeal is whether the trial court's admission into evidence of records from the Tokyo school was reversible error. The Tokyo school records, even if improperly admitted, were merely

cumulative of other evidence and therefore their admission was not reversible error. Appellant contends that admission of school records from the Tokyo school was reversible error because they were hearsay and lacked a foundation for authenticity. The court overruled the objection and admitted the documents as business records. Appellant contends this was error because the foundational requirements for such admission were not met. Even if the appellant is correct in this regard, it would appear to be harmless error, as these records merely added to other evidence that was properly admitted. The Tokyo school records merely documented Drew's progress at the school and the lack of progress on Drew's part. We conclude that the admission of the school records was not reversible error.

*Conclusion*

For the above reasons, the order of the district court is AFFIRMED.