[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15554
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:08-cv-21412-JEM

ADA MAE RUTLEDGE,

                                                              Plaintiff - Appellant,

versus

NCL (BAHAMAS), LTD.,
a foreign profit corporation,
d.b.a. NCL,
d.b.a. Norwegian Cruise Line,

                                                              Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 20, 2012)

Before HULL, PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Ada Mae Rutledge appeals several of the district court's evidentiary rulings in her negligence-based jury trial against Norwegian Cruise Line ("NCL"). Rutledge was aboard NCL's Norwegian Sun cruise ship on March 3, 2007, when she was injured in a fall as she attempted to enter an elevator.

NCL security officer Stephen Pentland accompanied Rutledge from the elevator to the ship's infirmary, where her injured arms were immobilized. Pentland testified that Rutledge smelled of alcohol and had glassy eyes, so he requested that she take an alcohol breath test, and she consented. The test was performed at around 8:30 P.M., two hours after Pentland said the fall had occurred. The device he used is called BreathScan and is manufactured by Akers Biosciences, which describes it as a "disposable screening device for one-time use." A person will blow into the device for ten seconds, and any alcohol in the breath will cause crystals inside the device to change color from yellow to blue. The crystals are coated with potassium dichromate and sulfuric acid, which react to alcohol to create acetic acid and chromium sulfate. The device Rutledge used was designed to detect a blood alcohol content ("BAC") of .08% or higher. Pentland testified that when Rutledge blew into the device, the crystals changed color from yellow to blue, indicating that two hours after the fall, Rutledge had an alcohol level of at least .08%.

Rutledge's and Pentland's versions of the circumstances surrounding the fall varied considerably. Rutledge says she tripped as she entered the ship's atrium elevators, but Pentland said he found her in the ship's aft elevators. Rutledge believed she fell at around 4:30 P.M., but Pentland said it was 6:30 P.M. Rutledge said she had tripped over frayed or bunched carpet, but Pentland said he inspected the area and found nothing amiss.

Rutledge brought a negligence suit against NCL, seeking damages for the cost of repeated surgeries on her shoulders as a result of the fall. Before trial, Rutledge moved in limine to exclude the breath test as unreliable, and the district court denied the motion without prejudice. After the jury was selected, the district court reexamined the motion, heard arguments from both sides, and allowed the breath test to be used. After hearing testimony and arguments over parts of three days, the jury found that NCL had not been negligent.

Rutledge appeals the district court's decision to admit the breath test. She also appeals testimony on the effects of mixing her medications with alcohol, and the admittance of photographs of the elevators where Pentland said he found Rutledge.

In diversity cases in federal court, the Federal Rules of Evidence govern the admissibility of evidence. <u>Flury v. Daimler Chrysler Corp.</u>, 427 F.3d 939, 944

3

(11th Cir. 2005).  We review a district court's evidentiary rulings for "abuse of discretion that affected the outcome of a trial."  United States v. Brown, 415 F.3d 1257, 1266 (11th Cir. 2005).

## I. Breath Test

Rutledge contends that the district court erred by denying her motion to exclude evidence of the breath test under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993).  "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Daubert, 509 U.S. at 589, 113 S. Ct. at 2795.  The burden of establishing reliability lies with the proponent.  United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

Scientific test results are subject to the same reliability and relevancy standards as scientific testimony itself.[1]  United States v. Lee, 25 F.3d 997, 998-99

---

[1]  Scientific evidence is usually presented by an expert, see Lee, 25 F.3d at 998-99, but Pentland was never qualified as an expert at the district court.  In her reply brief, Rutledge argues that a proponent of scientific evidence must be an expert witness but then confusingly proclaims that "plaintiff contends that the evidence was not scientific."  Even if we interpret these statements to say that it was error for Pentland–rather than an expert–to introduce the breath test, Rutledge did not make this argument in her initial brief.  Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) ("Since Wilkerson did not raise this issue until her supplemental reply brief, we deem it abandoned.").  Accordingly, we focus on Rutledge's initial arguments about the reliability and relevancy of the breath test device itself.

4

(11th Cir. 1994). Daubert identifies several factors that a court may consider as appropriate in gauging the reliability of scientific evidence or methods: (1) whether it has been subjected to testing; (2) whether it has been subjected to peer review; (3) its known or potential error rate; and (4) whether it has been generally accepted in the relevant scientific community. 509 U.S. at 593-94, 113 S. Ct. at 2796-97.

However, a district court has "the discretionary authority needed . . . to avoid unnecessary reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted . . . . Indeed, the Rules seek to avoid unjustifiable expense and delay as part of their search for truth and the just determination of proceedings." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152-53, 119 S. Ct. 1167, 1176 (1999) (quotations and alterations omitted). "Thus, whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." Id. at 153, 119 S. Ct. at 1176.

For example, "[t]here is rarely a reason for a court to consider opinions that medical doctors routinely and widely recognize as true, like cigarette smoking causes lung cancer and heart disease, too much alcohol causes cirrhosis of the liver, and that the ingestion of sufficient amounts of arsenic causes death."

McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1239 n.5 (11th Cir. 2005).

Alcohol breath tests have been generally recognized as reliable since at least 1973. See Cal. v. Trombetta, 467 U.S. 479, 489 n.9, 104 S. Ct. 2528, 2534 n.9 (1984); United States v. Brannon, 146 F.3d 1194, 1196 (9th Cir. 1998) ("Twenty-five years ago breathalyzers were certified as accurate by the National Highway Traffic Safety Administration of the Department of Transportation. Their methodology is well-known and unchallenged."); United States v. Reid, 929 F.2d 990, 994 (4th Cir. 1991) ("The best means of obtaining evidence of the breath alcohol content, and the least intrusive way of testing, is the breathalyzer test."); Standard for Devices to Measure Breath Alcohol, 38 Fed. Reg. 30,459, 30,459 (Nov. 5, 1973). Even if we engage in a rigorous Daubert analysis of this particular breath test device, we find that its admission was not an abuse of discretion. As NCL noted in its opposition to Rutledge's motion, the device used by Pentland has been subjected to laboratory testing that showed only one false positive in 1,200 trials. This information means the first and third Daubert factors weigh towards admitting the test. As for peer review and general scientific recognition, the device was approved by the Department of Transportation's National Highway Traffic Safety Administration ("NHTSA") on January 31, 2007, as conforming to "Model Specifications for Screening Devices to Measure

6

Alcohol in Bodily Fluids." Conforming Products List, 72 Fed. Reg. 4559, 4559 (Jan. 31, 2007). It was still on the list on December 15, 2009, when the NHTSA published an update. Conforming Products List, 74 Fed. Reg. 66,398, 66,399 (Dec. 15, 2009). These specifications "established performance criteria and methods for testing alcohol screening devices to measure alcohol content." Id. at 66,398. Given the breath test device's low error rate in testing and its acceptance in the community as an effective alcohol tester,[2] the district court did not abuse its discretion in finding that the device satisfies Daubert's reliability requirements.

Rutledge nonetheless contends that the device's manufacturer explicitly states that it should be "used only as a screening device and is only an indication of the possible presence of alcohol in the blood of the test subject. . . . BreathScan is not intended to legally determine blood alcohol presence, level, or inference of intoxication." Despite this language, the manufacturer still provides different tests for different alcohol concentrations (.02%, .05%, and .08%), which at least implies that the tests are indeed able to determine alcohol level. As the district court noted, this creates a contradiction, which could certainly go to the weight accorded to the results by the jurors, but it does not destroy the reliability of the method

---

[2]     NCL also reported to the district court that the armed forces have purchased over 1.5 million of the devices for screening soldiers' BAC.

itself, which was confirmed in laboratory testing. The purpose of <u>Daubert</u> is to determine whether a methodology "is sufficiently reliable" to be presented to a jury. <u>Hudgens v. Bell Helicopters/Textron</u>, 328 F.3d 1329, 1338 (11th Cir. 2003). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596, 113 S. Ct. at 2798.

Rutledge further contends that the breath test was irrelevant because it was merely cumulative in light of her admission to drinking three glasses of wine during the afternoon leading up to her fall. "Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance." <u>Id.</u> at 591, 113 S. Ct. at 2795 (quotations omitted). Evidence is relevant so long as it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The relevance exists even if the fact-finder fails to be persuaded by that evidence. It is not necessary that the item of evidence alone convinces the trier of fact or be sufficient to convince the trier of fact of the truth of the proposition for which it is offered." <u>McKoy v. North</u>

8

Carolina, 494 U.S. 433, 440, 110 S. Ct. 1227, 1232 (1990) (quoting State v. McKoy, 372 S.E.2d 12, 45 (1988) (Exum, C.J., dissenting)). Rutledge admitted that she had consumed three glasses of wine but said she was not intoxicated when she fell. The breath test showed that perhaps she was intoxicated. If nothing else, the breath test's results aided the jury in determining the accuracy of Rutledge's memory of the circumstances surrounding her fall, which were hotly debated at trial and were especially relevant in determining whether the carpet was bunched where Rutledge fell.[3]

Rutledge's final argument on the breath test is that the district court should have excluded the results because NCL destroyed the device. A party moving for sanctions for spoliation "must establish, among other things, that the destroyed evidence was relevant to a claim or defense such that the destruction of that evidence resulted in prejudice." Eli Lilly & Co. v. Air Express Int'l USA, Inc., 615 F.3d 1305, 1318 (11th Cir. 2010). However, Rutledge does not dispute NCL's contention that the device changes colors again soon after the test has concluded, nor that the device is viable for one-time use only. The test results

---

[3] Even assuming arguendo that it was error to admit the breath test, Rutledge argues that it was irrelevant only because it was cumulative of her testimony that she had been drinking. But this would not amount to anything more than harmless error. Drew P. v. Clarke Cnty. Sch. Dist., 877 F.2d 927, 931-32 (11th Cir. 1989); Rabon v. Automatic Fasteners, Inc., 672 F.2d 1231, 1239 (5th Cir. 1982) ("The improper admission of evidence which is merely cumulative of matters shown by other admissible evidence is harmless error.").

were witnessed, verified, and attested by Pentland and Jean Darlington, one of NCL's nurses. Since it could not reliably be used again, possessing the device would be of extremely limited value. Also, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam). Rutledge has failed to present any evidence that NCL destroyed the device in bad faith. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1310 (11th Cir. 2009).

## II. Drug/Alcohol Interaction

Rutledge contends that it was error for the district court to allow NCL to question Rutledge about the interaction between her prescription medications and the alcohol she admitted she had consumed. However, Rutledge provides no citations nor arguments as to why this was error. There is only a brief summary of Rutledge's testimony, then a bald conclusion that "[a]llowing these repeated references to drug-alcohol interaction, with no scientific support, was highly prejudicial and an abuse of discretion." This issue is waived. See N.L.R.B. v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities,

10

are generally deemed to be waived.").[4]

### III. Photographs of the Elevators

Rutledge argues that the district court abused its discretion by admitting photographs of elevators that Pentland said included the one in which he found Rutledge. At Pentland's command, Sumen Ray–an NCL security supervisor who had assisted Rutledge to the infirmary–had taken photographs of the aft elevators at around 8:00 P.M. on the day of the fall. However, Ray was unavailable to testify during the trial. Pentland said that the photographs contained a fair and accurate representation of the elevator in which he had found Rutledge, but he could not confirm with certainty that the photographs were of the actual elevator because the elevators all looked alike.

The requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). "A district court's determination that an article of evidence has been properly authenticated will not be overturned unless there is no competent

---

[4] Even if we deem it not waived, Rutledge still fails to show reversible error because she did not object to Dr. Salvador Ramirez's testimony on this same topic and has not shown how Dr. Ramirez's testimony would rise to the level of plain error, as is required where a party fails to object at the district court. See Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1179 (11th Cir. 2002) ("For evidence and argument to which no objection has been raised, this court reviews for plain error.").

evidence in the record to support it." United States v. Koziy, 728 F.2d 1314, 1321 (11th Cir. 1984). In this case, there is competent evidence to support the admission of the photographs. Pentland testified that they fairly and accurately depicted the elevator in which Rutledge had fallen. Pentland and Ray had both been in the elevator as they assisted Rutledge immediately after her fall, so they both knew which elevator was in question. And Pentland had personally inspected the area around the elevator, looking for any defects. At most, the photographs were cumulative of Pentland's testimony. See Drew P. v. Clarke Cnty. Sch. Dist., 877 F.2d 927, 931-32 (11th Cir. 1989).

Rutledge has failed to show any reversible error in the district court's evidentiary decisions. Accordingly, we affirm.

AFFIRMED.[5]

---

[5] Rutledge's motion for oral argument is DENIED.